Matter of New York State Off. of Victim Servs. v McCray (2026 NY Slip Op 50254(U))

[*1]

Matter of New York State Off. of Victim Servs. v McCray

2026 NY Slip Op 50254(U)

Decided on March 2, 2026

Supreme Court, Albany County

Marcelle, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 2, 2026
Supreme Court, Albany County

In the Matter of the New York State Office of Victim Services, 
 on behalf of Marie LaPointe, the representative of the crime victim, and all other victims of respondent's crimes, Petitioner,

againstTyseam McCray, Respondent.

Index No. 911463-24

Letitia James, Attorney General, Albany (Stacey Hamilton of counsel)Tyseam McCray, pro se, Respondent

Thomas Marcelle, J.

INTRODUCTIONNew York has committed itself, by statute and sustained legislative attention, to ensure that victims of crime are afforded meaningful avenues of redress (Executive Law § 632a—familiarly known as the "Son of Sam Law"). Central to that commitment was the creation of the Office of Victim Services (OVS), an agency vested with unusual and substantial authority to protect crime victims (Waldman v. State, 163 AD3d 1114 [3d Dept 2018]). Among OVS's various powers is the power to seek an injunction to freeze the funds of a convicted person. The purpose of the injunction is to allow a victim (or his representative) time to sue the convicted person before those funds are dissipated.
However, OVS cannot act on its own accord. Rather, it only may seek relief on behalf of a crime victim or his representative who is prepared to commence a civil action against the convicted person (Executive Law § 632-a [1][d], [5] [c] & [6] [a]). In this case, the representative on whose behalf OVS is acting is the decedent crime victim's aunt. The question presented, therefore, is whether on this record assuming OVS may invoke those extraordinary powers on behalf of a deceased crime victim's aunt who apparently lacks the capacity to bring suit. This presents a unique question.

BACKGROUND
This case starts with a tragic tale. In 2019, Respondent Tyseam McCray (McCray) shot eighteen-year-old David LaPointe (David) in the back of the head, killing him. McCray later pleaded guilty and was sentenced to nearly a quarter of a century in prison.[FN1]

A few years later, McCray received a settlement of more than $50,000 arising from litigation unrelated to the homicide. This money is currently in the possession of the New York City Comptroller but is ultimately destined for deposit into McCray's inmate account.
Upon learning of the impending payment, OVS notified the LaPointe family. David's aunt, Marie LaPointe (Aunt Marie), responded. In her affidavit, she describes the grief the family has suffered and McCray's lack of remorse. She reports that the victim's mother resides in another country without reliable communication and that his father suffers from deep grief and depression. Neither parent has expressed an interest in commencing an action against McCray for David's death. Moreover, neither OVS nor Aunt Marie mentions whether estate proceedings have commenced or an administrator or executor for David's estate has been appointed.
Now, Aunt Marie relates that she had a uniquely close relationship with David and considered him a "second son." More importantly, in the context of this case, she tells the court that she intends to sue McCray "immediately," although she provides no detail as to the legal mechanism by which she proposes to do so. She, nevertheless, has asked OVS to freeze McCray's account.
Accordingly, OVS brought this Petition on behalf of Marie LaPointe as David's representative. OVS moves the court to enjoin (at least preliminarily) the transfer of the settlement funds to McCray. McCray opposes any restrictions on the use and possession of his settlement money.

THE PRELIMINARY INJUNCTION STANDARD
A preliminary injunction is a drastic remedy, entrusted to the sound discretion of the court and issued only upon a clear showing that the movant has satisfied each prong of the familiar tripartite test: (1) a probability of success on the merits; (2) irreparable injury absent injunctive relief; and (3) a balance of equities tipping in the movant's favor (CPLR 6301; Camp Bearberry, LLC v Khanna, 212 AD3d 897, 898 [3d Dept 2023]).
The court begins with the merits prong, the most important prong—without a likelihood of success, little else matters. To determine a movant's likelihood of ultimate success, a court typically assesses the merits of the pending proceeding. A Son of Sam proceeding, however, has no underlying merits to assess because a crime victim has not filed suit and may never do so. Since the merits prong assesses a lawsuit's likelihood of achieving its ultimate objective, the merits prong should, without actual merits to review in the Son of Sam context, correspond directly to OVS's ultimate objective—that is, to freeze respondent's funds so that the victim can bring an action (Matter of New York State Off. of Victim Servs. v Wade, 79 Misc 3d 254, 259 [Sup Ct, Albany County 2023]). Consequently, here, OVS's likelihood of success rises or falls with the likelihood that a civil action against McCray will be filed.
Here is where it gets tricky. The court has no doubt Aunt Marie would file a suit if she could, but can she? The answer boils down to this—is Aunt Marie a qualified representative under the Son of Sam Law?
The Legislature defines representative broadly. Representative means "one who [*2]represents or stands in the place of another person, including but not limited to an agent, an assignee, an attorney, a guardian, a committee, a conservator, a partner, a receiver, an administrator, an executor or an heir of another person, or a parent of a minor (Executive Law § 621[6] [emphasis added]).
OVS urges a broad reading of Executive Law § 621(6). It emphasizes that only "some type of relationship must be demonstrated to establish that a person is entitled to represent a crime victim" (New York State Crime Victims Bd. v Jackson, 4 AD3d 710, 711 [3d Dept 2004]). Accordingly, OVS posits that an aunt's close familial bond constitutes "some type of relationship" sufficient to confer representative status. OVS does not, in the context of this case, stop there. It goes further, contending that the crime victim's representative need not possess the capacity to sue the respondent at all. This interpretation of representative is breathtakingly broad.
OVS's position has some merit. No doubt Executive Law § 621(6)'s definition of representative is vast—it is not, however, boundless. While the statutory list is non-exhaustive, under settled principles of statutory construction, general language following a specific list is ordinarily limited to persons or things of the same kind or class as those enumerated (ejusdem generis) (Makhani v Kiesel, 211 AD3d 132, 145 [1st Dept 2022]; Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 32 at 199 [1st ed 2012]). Here, every example set forth in Executive Law § 621(6) describes a legal or fiduciary relationship—one that carries recognized authority to act on another's behalf. A blood relationship, standing alone, is not such a relationship.
OVS argues that requiring some sort of authority to act on another's behalf is too cramped an interpretation. OVS says that the Third Department has never expressly held that a crime victim representative, to be a representative, must have authority to act on the victim's behalf (Jackson, 4 AD3d at 711).
This is true, but OVS overreads Jackson. In Jackson, the alleged representative did not identify any relationship with the victim at all, so the Third Department held that some type of relationship must be demonstrated between the alleged representative and the victim, remitting the case to the Supreme Court to clarify the alleged representative's status. The court understands this holding to mean that demonstrating "some type of relationship" to the victim is necessary, but may nonetheless be insufficient to elevate someone to a "representative" under Executive Law 621(6).
OVS argues that if Jackson does not get Aunt Marie her representative status, the case of Matter of New York State Off. of Victim Servs v. Alexis does (233 AD3d 1248 [3d Dept 2024]). In Alexis, the Third Department held that the deceased crime victim's mother qualified as a crime victim representative, even though the deceased victim had two minor children who were his distributees and the mother was not appointed the administrator or executor of his estate (id. at 1249). The Alexis court reasoned that the mother "has not been appointed the administrator or executor of her son's estate [does not] exclude her as a representative . . . because respondent also indicates that no estate proceeding has been commenced—meaning that no one else has been named to either role" (id. [emphasis added]). The implication is that the mother would have been excluded from being representative had another person been named as administrator or executor.
This precedent certainly makes a strong case for finding Aunt Marie is David's representative. But there is a slight proof problem. In Alexis, the court emphasized a critical fact not present—the mother's ability to be appointed administrator or executor. No such proof has [*3]been offered here. Aunt Marie does not claim that she has been appointed administrator or executor. Nor has OVS shown that she is otherwise capable of acquiring that status. Assuming that 19-year-old David died intestate, only the living parents could be appointed administrator or executor (EPTL 4-1.1). The court could speculate, but speculation is not a substitution for evidence.
To the extent that OVS suggests a crime victim's representative need not possess the capacity to sue a convicted person for OVS to receive injunction relief, it is a suggestion the court cannot embrace. Since OVS must show, by clear and convincing evidence, that someone is likely to file a claim against McCray, that someone must have the capacity to sue him. While Aunt Marie wants to sue McCray, she cannot—she lacks any capacity to do so. And nothing in the Son of Sam law gives her standing to sue on behalf of David's estate. Executive Law § 632-a(3) does not displace the standing requirements of EPTL 4-1.1, SCPA 1001, or CPLR 3211(a)(3) as to who may sue on behalf of a deceased victim; it just extends the time limit during which the victim's representative may sue.
In sum, the problem is this: Aunt Marie is willing to sue but she is not capable; David's parents are capable of suing but are not willing. Therefore, because OVS has not demonstrated, on the present record, anyone who is both willing and capable of suing the respondent, the court finds that OVS has not established a likelihood of success on the merits prong.
OVS, however, satisfies the second and third prongs of the preliminary injunction test. The second prong, the irreparable harm prong, requires a showing that the movant will suffer irreparable harm absent the injunction. Normally, irreparable harm means a harm that cannot be repaired by money (Di Fabio v Omnipoint Communications, Inc., 66 AD3d 635, 636-637 [2d Dept 2009]). More than money is at stake here. On the line is OVS's statutory duty to ensure a criminal's assets remain in place for a crime victim. "[A] threat to OVS's mandate constitutes an irreparable harm" (Wade, 79 Misc 3d at 260). And without injunctive relief, McCray could spend his funds down and leave the victim's estate nothing to recover, thereby "defeat[ing] the very purpose of the statute" (New York State Crime Victims Bd. ex rel. Organek v Harris, 68 AD3d 1269, 1271 [3d Dept 2009]). This threat is real and compromises OVS's statutory duty. Therefore, OVS has established an irreparable injury.
The last injunctive prong, the equity prong, requires OVS to show that the balance of the equities tips in its favor. Here, if the court grants the injunction, McCray would be denied access to his money (except for $1,000).[FN2]
This severe restriction might cause grave harm in some circumstances, but not in this case. McCray is incarcerated; therefore, he "has life's essentials: food, shelter, medical care, clothing and running water provided to [him] free by the Department of Corrections and Community Supervision" (Wade, 79 Misc 3d at 261). Therefore, the court finds that the balance of the equities tips in OVS's favor.
Because OVS lacks a likelihood of success on the merits, a preliminary injunction cannot issue at this time. Nonetheless, considering the strong showing of irreparable harm and the compelling equities favoring preservation of the funds, outright denial of injunctive relief would be unduly rigid. Given that this case amounts to a case of first impression, the court will allow [*4]OVS time to submit supplemental proof to establish the merits prong.
For the foregoing reasons, it is therefore,
ORDERED that Petitioner NEW YORK STATE OFFICE OF VICTIM SERVICES shall, consistent with this Decision and Order, supplement Marie LaPointe's affidavit or provide other supplemental affidavits within sixty (60) days of this Decision and Order with sufficient evidence to demonstrate the merits prong and the temporary order of Justice Daniel Lynch shall remain in effect for those sixty days; and it is further
ORDERED that this Decision and Order be stayed for a period of thirty (30) days from service of this Decision and Order to permit appellate review, and it is further
ORDERED that, should petitioner file a notice of appeal within the stay period, this matter will be stayed pending the resolution of the appeal, and it is further
ORDERED that, if no notice of appeal is filed within the stay period and the petition is not supplemented consistent with this Decision and Order within sixty (60) days of this Decision and Order, the petition is denied.
DATED: March 2, 2026Thomas MarcelleSupreme Court Justice

Footnotes

Footnote 1:https://queensda.org/queens-man-sentenced-to-22-years-for-fatal-shooting/

Footnote 2:"Notwithstanding any other provision of law to the contrary, a judgment obtained pursuant to this section shall not be subject to execution or enforcement against the first one thousand dollars deposited in an incarcerated individual account . . . ." (Executive Law § 632-a [3].)